**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| IN RE:<br><br>Tamara Marie Katzenberger,<br><br>Debtor. | Case No. 25-17421-MER<br><br>Chapter 13 |
| Tamara Marie Katzenberger,<br><br>Plaintiff,<br><br>v.<br><br>Point Digital Finance Inc., Point Digital Finance as Trustee for Point Titling Trust,<br><br>Defendants. | Adv. Proc. No. 26-01048-MER |

**DEFENDANTS' MOTION TO COMPEL ARBITRATION OF COUNTS I THROUGH V AND TO STAY THE ADVERSARY PROCEEDING**

Point Digital Finance, Inc. paid Tamara Katzenberger $74,000 in exchange for the exclusive option to purchase a defined percentage interest in her home. The parties documented that transaction in an Option Purchase Agreement (the "Option"). Katzenberger now alleges that the transaction was really a home-secured loan and that Point misrepresented its nature and cost.

Counts I through V allege that the transaction violated Colorado law. Based on those alleged violations, Katzenberger asks the Court to void the Option and release the Deed of Trust. Count VI is different. Pleaded only in the alternative, it asks the Court—if the Option is valid and is not a loan—to treat the Option as an executory contract that Katzenberger may reject under 11 U.S.C. § 365.

Point Digital Finance, Inc., individually and as Trustee for Point Titling Trust (collectively, "Point"),* moves to compel arbitration of Counts I through V and to stay this adversary proceeding, including Count VI. The parties agreed to arbitrate "any and all" disputes arising out of, relating to, or resulting from the Option or the Property. Counts I through V fall squarely within that agreement: each challenges the Option's nature, legality, or enforceability. Nor does the Truth in Lending Act ("TILA") bar arbitration. Its arbitration prohibition applies only to a "residential mortgage loan" or an "extension of credit under an open end consumer credit plan secured by the principal dwelling of the consumer." 15 U.S.C. § 1639c(e)(1). The Option extends no "credit" because it creates no debt whose payment Katzenberger has a right to defer. *See id*. §§ 1602(f), (dd)(5).

Point will not ask the arbitrator to decide whether Katzenberger may reject the Option under § 365. The arbitrator can resolve Counts I through V while this Court keeps jurisdiction over any § 365 issue.

The Court should compel arbitration of Counts I through V and stay the entire adversary proceeding pending arbitration.

## RELEVANT FACTS

On July 28, 2022, Katzenberger signed the Option with Point. Point paid her $74,000. In exchange, Katzenberger granted Point an option to buy a defined interest in her home at 3130 Meadow Lane, Grand Junction, Colorado (the "Property"). Declaration of Libby Frauenberger in Support of Motion to Compel Arbitration ("Point Decl.") ¶ 4, Ex. A. The parties also executed a Deed of Trust securing her performance. *Id.* ¶ 8, Ex. B.

---

* The Complaint names the trustee defendant as "Point Digital Finance as Trustee for Point Titling Trust." Its correct name is Point Digital Finance, Inc., as Trustee for Point Titling Trust.

The Option gave Point the right to exercise after 30 years or upon specified triggering events. Point Decl. ¶ 4, Ex. A § 1.4.2. To exercise, Point would have to pay Katzenberger an additional $118,390.68, bringing the total Option Consideration to $192,390.68 for Point's 69.40% interest. *Id*. §§ 1.1, 1.4 & Schedule 2. Point Proceeds are calculated from the Property's value and Point's percentage interest, less the Exercise Payment. *Id*. § 1.4 & Schedule 2. Katzenberger may repurchase the Option by paying the contractually calculated Point Proceeds. *Id*. § 1.4.1. If she does not repurchase and Point does not exercise, Katzenberger pays Point nothing and keeps the initial $74,000 payment. *Id*. §§ 3.1, 3.2.

Section 7.20 contains the arbitration agreement:

> OWNER AGREES THAT ANY AND ALL CONTROVERSIES, CLAIMS, OR DISPUTES WITH POINT . . . ARISING OUT OF, RELATING TO, OR RESULTING FROM THIS AGREEMENT OR THE PROPERTY, SHALL BE SUBJECT TO BINDING ARBITRATION . . . .

*Id.*, Ex. A § 7.20.1. JAMS administers the arbitration and selects a neutral arbitrator under its rules. *Id.* § 7.20.2. The clause permits relevant discovery, requires a reasoned written decision, and obligates Point to pay all administrative and hearing fees except the first $250 of any filing fee for an arbitration Katzenberger initiates. *Id.* §§ 7.20.2–.3. California law governs the Option. *Id.* § 7.10.

Katzenberger filed this Chapter 13 case on November 12, 2025, and this adversary proceeding on February 23, 2026. Counts I through V allege unconscionability under C.R.S. § 5-5-109; violations of the Colorado Consumer Protection Act; violations of Colorado mortgage-lending requirements; violations of the Colorado Uniform Consumer Credit Code; and, alternatively, violations of Colorado reverse-mortgage requirements. Compl. ¶¶ 88–131. Each count rests on the same premise: the Option was not a true option but an unlawful or deceptively marketed home-secured loan. *See, e.g.*, *id.* ¶¶ 2–7, 42–46, 88–131. Katzenberger asks the Court

to declare the transaction and contracts void or unenforceable and to release the Deed of Trust. *Id.*, Prayer for Relief ¶¶ a–c.

Count VI is alternative to Counts III through V. It matters only if the Option is valid and not a loan. In that event, Katzenberger asks the Court to declare the Option executory and permit rejection under § 365. *Id.* ¶¶ 132–37.

Point filed its Answer on May 1, 2026. ECF No. 16. On August 14, 2026, within the deadline established by the Court's scheduling order, Point filed an Amended Answer expressly asserting its right to arbitration. ECF No. 27. The parties have filed the required joint report and discovery plan, and Point has served its initial disclosures. Katzenberger has served written discovery requests, but Point has not served written discovery of its own, no depositions have been taken, and neither party has sought a ruling on the merits.

**ARGUMENT**

The path is straightforward. The FAA governs, Katzenberger agreed to arbitrate, and Counts I through V fall within the agreement's broad scope. TILA does not bar arbitration because the Option does not extend "credit" and so is not a "residential mortgage loan." Katzenberger's remaining challenges attack the Option as a whole—not the arbitration clause—so the arbitrator must decide them. Point timely seeks arbitration at this early stage, after amending its Answer to assert arbitration as a defense and before the parties have materially litigated the merits. Arbitration creates no inherent conflict with the Bankruptcy Code: the Court can stay Count VI, reserve the ultimate § 365 question, and keep jurisdiction while arbitration proceeds. FAA § 3 requires a stay.

## I. The FAA governs, and Katzenberger agreed to arbitrate.

Under FAA § 2, a written arbitration clause in a contract involving interstate commerce is valid, irrevocable, and enforceable—unless it fails on generally applicable contract grounds. 9 U.S.C. § 2. To decide whether to compel arbitration, the Court determines whether the parties are bound by the arbitration agreement and whether the claims fall within its scope. *Beltran v. AuPairCare, Inc.*, 907 F.3d 1240, 1250 (10th Cir. 2018). Once the Court finds an arbitrable issue, FAA § 4 directs arbitration according to the agreement, and FAA § 3 requires a stay if a party requests one. 9 U.S.C. §§ 3, 4; *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024).

The Option involves interstate commerce. Katzenberger and the Property are in Colorado. Compl. ¶¶ 8, 11. Point is headquartered in California. *Id.* ¶ 12. The transaction falls within the full reach of the Commerce Clause and the FAA. *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273–74 (1995).

California's generally applicable contract law governs formation and contract defenses; the FAA supplies the federal rule of enforceability. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). The Option selects California law and California arbitration procedures and provides for JAMS administration. Those choices are enforceable. *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 476–79 (1989).

California's ordinary contract requirements are met. Katzenberger had capacity, signed the Option, and accepted Point's $74,000 payment in exchange for the rights she granted. Compl. ¶ 66; Point Decl. ¶¶ 4, 6, Ex. A. Her signature showed assent. *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 282 P.3d 1217, 1224 (Cal. 2012). The parties' exchange supplied consideration. *Steiner v. Thexton*, 226 P.3d 359, 366 (Cal. 2010).

The Complaint raises no real dispute over formation. Katzenberger does not allege forgery, incapacity, or substitution of the arbitration language. She challenges Point's description of the transaction, its disclosures, and the Option's legality. *See, e.g.*, Compl. ¶¶ 48–76, 88–131. Those allegations attack the Option, not the parties' assent to arbitrate.

## II. The arbitration clause covers Counts I through V.

The clause reaches "any and all" disputes with Point arising out of, relating to, or resulting from the Option or the Property. Point Decl., Ex. A § 7.20.1. That language creates a broad arbitration clause—and a presumption of arbitrability. *Newmont U.S.A. Ltd. v. Ins. Co. of N. Am.*, 615 F.3d 1268, 1274–75 (10th Cir. 2010). Under that presumption, even a collateral claim is arbitrable if it implicates the contract's construction or the parties' rights and duties under it. *Id*.

Every state-law count falls within the arbitration clause. Count I challenges the Option as unconscionable. Count II alleges deception about the Option. Counts III through V seek to recharacterize it as a mortgage loan, consumer loan, or reverse mortgage. The requested relief includes voiding the Option and releasing the Deed of Trust. Compl. ¶¶ 88–131 & Prayer for Relief ¶¶ a–e. These claims do not merely touch the agreement. They challenge its nature, performance, and enforceability.

## III. TILA does not prohibit arbitration because the Option does not extend "credit."

TILA bars arbitration of disputes arising from a "residential mortgage loan" or an "extension of credit under an open end consumer credit plan secured by the principal dwelling of the consumer." 15 U.S.C. § 1639c(e)(1). A "residential mortgage loan" is defined as "any consumer *credit* transaction that is secured by a mortgage, deed of trust, or other equivalent

consensual security interest on a dwelling or on residential real property." *Id.* § 1602(dd)(5) (emphasis added). And TILA defines "credit" as "the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment." *Id.* § 1602(f). A transaction cannot extend "credit" under § 1602(f) unless it creates debt whose payment the debtor has a right to defer. *See Hasan v. Chase Bank USA, N.A.*, 880 F.3d 1217, 1219 (10th Cir. 2018) (explaining that "[t]he credit granted and the debt owed are two sides of the same transaction").

The Option creates no such debt. Point did not pay Katzenberger $74,000 in exchange for an obligation to return $74,000 plus interest. Point paid that amount for the right to acquire a defined interest in the Property. If Point exercises, it must pay Katzenberger an additional $118,390.68, bringing the total Option Consideration to $192,390.68. Point Decl., Ex. A §§ 1.1, 1.4. Point Proceeds are calculated from the Property's value and Point's contractual percentage interest—not by adding interest to the $74,000 payment. *Id.* § 1.4 & Schedule 2. And if Katzenberger does not repurchase the Option and Point does not exercise, she pays Point nothing and keeps the $74,000. *Id.* §§ 3.1, 3.2. The Option imposes no unconditional duty to return the $74,000 or pay interest on it.

The Complaint's reliance on an accompanying summary stating that Katzenberger must "repay Point" within 30 years, Compl. ¶ 62, does not change the analysis. TILA's statutory definition controls; the use of "repay" as shorthand does not itself establish debt or a right to defer its payment. *See Hasan*, 880 F.3d at 1219–20. Under the operative payment mechanics, Katzenberger does not repay $74,000 as principal; any Point Proceeds depend on the Property's value and arise through repurchase or exercise of the Option.

Nor does the likelihood that Point may recover its investment create a debt. The relevant question is whether the transaction created debt whose payment Katzenberger had a right to

defer—not whether Point's investment is likely to prove profitable. *See Foster v. EquityKey Real Est. Invs., L.P.*, No. 17-cv-00067-HRL, 2017 WL 1862527, at *4 (N.D. Cal. May 9, 2017). An expected return is not a repayment duty. Point's recovery depends on the Option's contractual mechanics and the Property's value, and the Option permits Point to receive less than its investment or nothing at all. That Point may ultimately realize a return does not convert the $74,000 option payment into debt.

Regulation Z confirms the distinction. The CFPB's Official Interpretation excludes from "credit" both "[t]he execution of option contracts" and "[i]nvestment plans in which the party extending capital to the consumer risks the loss of the capital advanced." 12 C.F.R. pt. 1026, supp. I, cmt. 2(a)(14)-1.vii–viii. The Option has both features. Point obtained an option that it need not exercise, and its potential return depends on the Property's value. If the Property depreciates, Point can receive less than it paid. Point Decl., Ex. A §§ 1.4, 2.1, 3.2 & Schedule 2.

*Foster* reached the same conclusion on an analogous home-equity option. 2017 WL 1862527, at *4. There, the homeowner received an option payment, but the agreement did not guarantee that she would ever have to return it; if the option holder declined to exercise, he owed nothing. *Id.* Because the homeowner had not agreed to repay the option payment unconditionally, the transaction was not "credit" under TILA. *Id.* The same reasoning applies here.

That conclusion resolves only whether the Option is "credit" under TILA's federal definition for purposes of § 1639c(e). It does not decide whether Colorado law independently characterizes or regulates the Option as a loan or other credit transaction. As explained next, those whole-contract challenges are for the arbitrator under the Supreme Court's decisions in *Buckeye* and *Rent-A-Center*.

## IV. The arbitrator must decide Katzenberger's attacks on the Option.

An arbitration clause is severable from the contract that contains it. A court decides challenges to the arbitration agreement itself; the arbitrator decides challenges to the contract as a whole—including claims that the contract is illegal, void, fraudulently induced, or unconscionable. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46 (2006); *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70–71 (2010).

Counts I through V attack the Option as a whole. They allege unconscionability, deceptive inducement, violations of Colorado lending law, and voidness or unenforceability. Compl. ¶¶ 88–131. None of those pleaded state-law claims challenges the arbitration clause itself. That distinction is dispositive. Under *Buckeye* and *Rent-A-Center*, the Court decides whether the parties agreed to arbitrate; the arbitrator decides whether the larger contract is void, illegal, or unconscionable. 546 U.S. at 445–46; 561 U.S. at 70–71.

Arbitration would not impair Katzenberger's ability to pursue those challenges. The parties selected JAMS to administer the arbitration and select a neutral arbitrator. The arbitration agreement provides procedural protections that let Katzenberger fully present her claims. It permits relevant discovery and requires a reasoned written decision. Point Decl., Ex. A §§ 7.20.2–.3. The agreement also sharply limits Katzenberger's arbitral costs: Point must pay all administrative and hearing fees except the first $250 of any filing fee for an arbitration Katzenberger initiates. *Id*. Nothing in the arbitration clause limits the substantive relief Katzenberger may seek on Counts I through V. Arbitration provides a fair and adequate forum for resolving the same state-law challenges Katzenberger has presented to this Court. Those challenges should be decided in the forum the parties selected.

## V. Point timely seeks arbitration.

Point has timely invoked its right to arbitration. Before filing this motion, Point amended its Answer—within the deadline set by the Court's scheduling order—to assert arbitration as a defense. Point thus placed its demand for arbitration in the pleadings while amendment remained timely under the Court's schedule.

This motion also comes early in the adversary proceeding. Although Point filed its original Answer on May 1, 2026, the parties' activity since then has been limited. They filed the Court-required joint report and discovery plan. Point served its initial disclosures, and on August 10, after Point informed her that it intended to file this motion, Katzenberger served written discovery requests. But Point has not served written discovery of its own, no deposition has been taken, and neither party has sought a ruling on the merits. The case has not materially progressed before Point's invocation of arbitration.

*Morgan v. Sundance, Inc.*, 596 U.S. 411, 417–19 (2022), requires courts to apply ordinary procedural rules without imposing an arbitration-specific prejudice requirement. The Tenth Circuit's decision in *Hill v. Ricoh Americas Corp.* is particularly instructive here. *See* 603 F.3d 766, 771–72, 775–76 (10th Cir. 2010) (holding that the defendant did not waive its right to compel arbitration by failing to demand arbitration in its answer, even though it thereafter participated in a Rule 26(f) conference and scheduling proceedings, exchanged initial disclosures, and received a request for production before moving to compel). Another Tenth Circuit case, *In re Cox Enterprises, Inc. Set-top Cable Television Box Antitrust Litigation*, is likewise relevant. There, the defendant had answered, the plaintiffs then served interrogatories and document requests, and the defendant moved to compel without having initiated discovery itself. 835 F.3d 1195, 1205–06 (10th Cir. 2016). The court held that the defendant had not

substantially invoked the litigation machinery. *Id*. at 1206. Here too, Point has not served discovery, no deposition has been taken, and no merits ruling has been sought or obtained. Point also amended its Answer to assert arbitration before filing this motion. The motion is timely.

## VI. Arbitrating Counts I through V does not conflict with the Bankruptcy Code.

The Bankruptcy Code does not displace the FAA just because arbitrable claims are joined with a bankruptcy claim. The party resisting arbitration must show that Congress intended otherwise through statutory text, legislative history, or an inherent conflict between arbitration and the Code's purposes. *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226–27 (1987); *In re Touchstone Home Health LLC*, 572 B.R. 255, 273–74 (Bankr. D. Colo. 2017). Whether a claim is core informs that inquiry but does not decide it. *Touchstone*, 572 B.R. at 274, 280–81.

No inherent conflict exists here. Counts I through V arise under Colorado law from a prepetition transaction. They could have been brought outside bankruptcy and depend on no right created by the Bankruptcy Code. Arbitration would determine the Option's legal character under the Colorado-law theories pleaded in Counts I through V, the parties' prepetition rights under those laws, and any state-law remedies. This Court would keep jurisdiction over Count VI and any bankruptcy consequences that remain after arbitration. *See id.* at 283–84 (compelling arbitration of pre-petition state-law dispute while retaining jurisdiction over its treatment in the bankruptcy case and prohibiting execution against the estate).

The requested lien relief does not change that conclusion. A proceeding to determine a lien's validity, extent, or priority may be statutorily core under 28 U.S.C. § 157(b)(2)(K), but core status does not automatically exempt a claim from the FAA. *Touchstone*, 572 B.R. at 280–81. Point filed no proof of claim, *see* Claims Register, so arbitration would not intrude on the

claims-allowance process. And this Court can keep jurisdiction to determine the effect of any award on estate property, the Deed of Trust, and Katzenberger's alternative request for relief under § 365.

*In re Mintze* is instructive here. There, a debtor challenged a prepetition home-secured transaction under nonbankruptcy consumer-protection laws and sought rescission of the loan and mortgage. The Third Circuit compelled arbitration because the claims did not arise under the Bankruptcy Code and arbitration did not inherently conflict with the Code—even though the requested relief could affect the debtor's plan and distributions to creditors. 434 F.3d 222, 229–31 (3d Cir. 2006). *Touchstone* likewise compelled arbitration even though the dispute affected the allowance and liquidation of a claim against the estate. 572 B.R. at 280–81.

Arbitration would simplify this proceeding, not disrupt it. The arbitrator would decide the state-law issues in Counts I through V. This Court would remain free to decide whether Katzenberger may reject the Option under § 365 and to grant any bankruptcy relief that remains appropriate after arbitration. That division honors the FAA without surrendering any authority the Bankruptcy Code gives this Court.

## VII. The Court can stay Count VI and reserve the § 365 question.

Count VI does not justify keeping the state-law claims in court. It is pleaded only in the alternative and matters only if the Option is valid and not a loan. Compl. ¶¶ 132–37. Arbitration may eliminate any need to reach it.

The Court need not send the ultimate rejection decision to the arbitrator. Section 365(a) permits assumption or rejection subject to bankruptcy-court approval, and Rule 6006 ordinarily presents that request by motion. 11 U.S.C. § 365(a); Fed. R. Bankr. P. 6006. The Court can reserve that statutory decision while arbitration resolves the state-law issues in Counts I

through V. *Moses v. CashCall, Inc.*, 781 F.3d 63, 71–72 (4th Cir. 2015); *In re McPherson*, 630 B.R. 160, 176–77 (Bankr. D. Md. 2021).

## VIII. Section 3 requires a stay of Counts I through V, and the Court should also stay Count VI.

Once the Court finds Counts I through V arbitrable, FAA § 3 requires a stay rather than dismissal. *Spizzirri*, 601 U.S. at 478.

Count VI should remain stayed as well. A stay of the entire proceeding is appropriate when resolution of the arbitrable claims may have a preclusive effect on the nonarbitrable claim. *Chelsea Fam. Pharmacy, PLLC v. Medco Health Sols., Inc.*, 567 F.3d 1191, 1200 (10th Cir. 2009); *Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 785 (10th Cir. 1998). That is precisely the situation here. Count VI is pleaded only in the alternative, arbitration may eliminate any need to decide it, and parallel proceedings would waste resources. A stay preserves the Court's jurisdiction over Count VI and any post-award bankruptcy relief while letting the parties arbitrate the claims they agreed to arbitrate.

The Court should stay the entire adversary proceeding and require periodic status reports. *See Frictionless World, LLC v. Frictionless, LLC (In re Frictionless World, LLC)*, No. 19-18459 MER, Adv. No. 19-01282 MER, 2026 WL 2322714, at *5 (Bankr. D. Colo. Mar. 6, 2020) (Romero, C.J.) (granting motions to compel arbitration and requiring status reports concerning arbitration).

## CONCLUSION

The parties agreed before bankruptcy to arbitrate the state-law dispute in Counts I through V, and the Bankruptcy Code supplies no reason to disregard that agreement. Point requests an order (1) compelling Katzenberger to arbitrate Counts I through V before JAMS

under § 7.20 of the Option; (2) staying this adversary proceeding, including Count VI, pending arbitration; (3) keeping jurisdiction over the ultimate § 365 issue and any bankruptcy implementation of the award; and (4) requiring joint status reports every 120 days and within 14 days after a final award.

Dated: August 17, 2026

Respectfully submitted,

MCGUIREWOODS LLP

*/s/ Jeffrey Paul Ehrlich*
Florida Bar No. 51561
MCGUIREWOODS LLP
888 16th Street, NW, Suite 500
Washington, DC 20006
Telephone: (202) 857-1717
Facsimile: (202) 857-1737
Email: jehrlich@mcguirewoods.com

MARKUS WILLIAMS LLC
Lacey S. Bryan #51908
1775 Sherman Street, Suite 1950
Denver, Colorado 80203-4505
Telephone (303) 830-0800
Facsimile (303) 830-0809
Email: lbryan@markuswilliams.com

*Counsel for Point Digital Finance, Inc., on behalf of itself and as Trustee for Point Titling Trust (erroneously sued as "Point Digital Finance as Trustee for Point Titling Trust")*

**CERTIFICATE OF SERVICE**

I certify that I filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered participants.

Dated: August 17, 2026 *<u>/s/ Jeffrey Paul Ehrlich</u>*