**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**

| | | |
|---|---|---|
| In re | ) | |
| TAMARA MARIE KATZENBERGER | ) | Case No. 25-17421 MER |
| Debtor. | ) | Chapter 13 |
| TAMARA MARIE KATZENBERGER, | ) | |
| Plaintiff, | ) | Adversary No. 26-01048 MER |
| v. | ) | |
| POINT DIGITAL FINANCE INC., | ) | |
| POINT DIGITAL FINANCE AS TRUSTEE FOR POINT TITLING TRUST | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE TO MOTION TO COMPEL ARBITRATION OF COUNTS 1 THROUGH V AND TO STAY THE ADVERSARY PROCEEDING**

## INTRODUCTION

Defendants lent $74,000 to Plaintiff and deferred payment to a later time. This is precisely the definition of credit—an obligation incurred that is due in the future. This is dispositive to Defendants' Motion to Compel Arbitration (the "Motion") because if this product is credit and thus a loan, the parties cannot be forced to arbitrate as the Truth in Lending Act (TILA), 15 USC. § 1639c(e)(1), prohibits arbitration of claims related to residential mortgage loans.

The loan is secured by Plaintiff's principal dwelling. Defendants recorded a deed of trust against Plaintiff's property to secure repayment. *See Ex. B to Mot.* Defendants barely discuss the deed of trust in their motion. A deed of trust is a classic hallmark of debt and the extension of credit that is secured by a principal dwelling. If Plaintiff does not owe any money to Defendants, how can a security interest for $74,000 be recorded with the Mesa County Clerk and Recorder? This alone belies Defendants' argument that repayment of the debt is not deferred to a later time.

The motion fails to cite any relevant case law to support its position that its home equity investment product is not a loan. Defendants rely on one non-precedential district court case, but that case addressed a wholly different product which resembles a traditional option, whereas Defendants' product behaves like a loan. Defendants fail to mention the one appellate case in the country that addressed a Home Equity Investment ("HEI") product virtually identical to Point's. In *Olson v. Unison Agreement Corporation*, the Ninth Circuit found that the HEI product at issue was a loan, not an "option." 2025 WL 2254522 (9th Circuit No. 23-2835 Aug. 7, 2025). Focusing on the substance of the agreement rather than its form, the Ninth Circuit held the HEI product was "credit" under the term's "plain and ordinary meaning" because it was an "initial advance of funds or goods coupled with an obligation to make future payment to the person providing that advance." *Id.* at *3. While not binding, the Ninth Circuit's analysis is helpful guidance for this Court.

Defendants spend a significant amount of time in the Motion discussing the Federal Arbitration Act (FAA) and the parties' agreement to arbitrate. The only relevant question for the Court to determine is whether Defendants' home equity investment product is a consumer credit transaction under the Truth in Lending Act (TILA). If the answer is yes, then Plaintiff cannot be forced to arbitrate her claims and the motion must be denied. If the answer is no, Counts I-V can

be compelled to arbitration. Plaintiff asks this Court to recognize that Defendants' product is a high interest loan, nominally labeled as an "option" designed to evade the TILA requirements. This deception should not be rewarded by forcing the parties to arbitration.

## ARGUMENT

### 1. TILA prohibits arbitration of Plaintiff's claims and Defendants' product is subject to this prohibition

"No residential mortgage loan . . . may include terms which require arbitration or any other nonjudicial procedure as the method for resolving any controversy or settling any claims arising out of the transaction." 15 U.S.C. § 1639c(e)(1). It is well established that the plain language of TILA prohibits pre-dispute agreements to arbitrate claims that involve a residential mortgage loan. *See Lyons v. PNC Bank, National Association*, 26 F.4th 180, 186 (4th Cir. 2022). With this unambiguous guidance, the question is whether Defendants' product meets the definition of a residential mortgage loan under TILA.

TILA defines a "residential mortgage loan" as "any consumer credit transaction that is secured by a mortgage, deed of trust, . . . or other equivalent consensual security interest on a dwelling or on residential real property that includes a dwelling." 15 U.S.C. § 1602(dd)(5). Defendants concede in their motion and Amended Answer that they recorded a deed of trust against Plaintiff's residential real property of Plaintiff. *See* Mot. at 2, Am. Answer ¶ 67. Therefore, to determine whether the product is a "residential mortgage loan" the Court must decide whether it is a "consumer credit transaction" under TILA.

Plaintiff is a consumer and the agreement meets the definition of credit. "Credit" is defined under TILA as "the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment." 15 U.S.C. § 1602(f). Defendants spend a significant amount of

time in its motion arguing that its product cannot meet the definition of "credit" based on the "option's contractual mechanics." Defendants' attempt to narrowly define credit places form over substance and should be rejected by this Court.

Defendants' own summary of the "key terms in the Point Agreement" illustrates Defendants' expectation of repayment and the deferral of payment, and thus demonstrates that the product is credit as defined under TILA. This summary, called "About My Point Agreement," uses the words "repay" or "repayment" nine separate times. It says, for example:

- "when I am ready to ***repay Point***"
- "my ***repayment*** amount"
- "I ***must repay Point*** within 30 years"
- "If I ***repay Point*** by selling my home..."

*See* Ex. 1, p. 1. Defendants presented the "About My Point Agreement" summary to Plaintiff and required her to initial next to each statement. Defendants now attempt to walk back their use of the word repay as "shorthand," but the fact remains that Defendants' own explanation of its product to consumers clearly and repeatedly says Point is giving the consumer money that must be repaid in the future, which is the very definition of a consumer credit transaction under TILA.

Defendants also send Plaintiff a "Quarterly Statement" which prominently displays a "Payoff Estimate" and states the homeowner will repay Defendants. One example is attached to this Response. *See* Ex. 2 (including statements such as "Your estimated **payoff**…", "your **repayment**…", "Your actual **repayment**…"). The Statement resembles a reverse mortgage statement and is prepared by Defendants' servicing contractor, RoundPoint Mortgage Servicing LLC. The Statement asserts that "Point's Equity as of 7/31/2025" is "$124,858." This further reveals the disingenuous nature of Defendants' position: on one hand, Defendants unequivocally

tell Plaintiff they have equity in her home now and send her payoff estimates, even though they have not yet exercised the "option," but on the other hand, claim in this litigation that they "need not exercise" the option and Plaintiff does not have a "repayment duty." Mot. at 8.

In addition to Defendants' direct statements to Plaintiff, Defendants' general statements on its website, quotes by its founder, and statements to its investors all indicate Defendants expect its loans will be repaid. *See* Compl. ¶¶ 15-41. Defendants' argument that it might simply choose not to recover on a loan strains credulity. The more credible interpretation is that an amount of money was given, repayment was deferred, a security instrument securing this amount was recorded, and there is an expectation of repayment. This is "credit" under TILA's definition no matter how Defendants wish to characterize it.

**2. <u>The Ninth Circuit and Arizona Superior Court rejected this option argument</u>**

In an unpublished decision, the Ninth Circuit held that a similar home equity investment product couched as an option agreement is a loan. *Olson,* 2025 WL 2254522 (9th Circuit No. 23-2835 Aug. 7, 2025). Defendants' product and Unison's product are substantially similar, and Unison's argument echoes Defendants' argument in this case. The Ninth Circuit stated that "we agree that option contracts generally do not constitute credit obligations, but that does not mean that the mere embedding of a formal option in a highly complex overall arrangement automatically exempts that arrangement from being classified as a "credit obligation." *Olson* at 5.

Unison argued that due to the nature of the option agreement, the consumer has no obligation to repay. The Court rejected that argument and noted that the "the fact that Unison must elect to receive the payment, by exercising the option, does not detract from the fact that, even prior to the exercise of the option, the Olsons have a very real set of contingent obligations

to make future payments to Unison." *Id.* at 3. The Court used this reasoning to find that the Unison product is a consumer credit obligation under Washington law, specifically a reverse mortgage.

This Court should follow the Ninth Circuit. Defendants cannot create a highly complicated contractual arrangement to lend money, secure repayment of this money by a deed of trust, and then rely on the option language to bypass TILA and avoid a court determination of the substantive issues.

An Arizona state trial court also considered and rejected the exact arguments in Defendants' Motion. In that case, Defendants were sued by a consumer and moved to compel arbitration.[1] The Arizona Superior Court of Maricopa County received briefing and held oral argument on the issue of whether TILA applies to the transaction and whether the parties can be forced to arbitration. The Court found that the TILA prohibition against arbitration agreements applies and denied the motion to compel arbitration. The minute order from these proceedings is attached as Exhibit 3. An appeal is currently pending.[2] Again, the Arizona proceeding dealt with the same product and same company that are currently before this Court.

Likewise, in litigation brought by the Massachusetts Attorney General against another HEI lender, Hometap Equity Partners, LLC ("Hometap"), a Massachusetts state trial court denied Hometap's motion to dismiss, finding that, among other claims, the allegations "make the HEI – in substance – more akin to a loan than an option to purchase real estate." *Commonwealth v. Hometap Equity Partners*, L.L.C., 2025 WL 2468564, *12 (Mass. Super. Ct. Aug. 21, 2025).

---

[1] *Steven Muskal v. Point Digital Finance, Inc.*, Maricopa County Superior Court, Case No. CV2025-024855 (Dec. 17, 2025).

[2] *Point Digital Finance, Inc. v. Steven Muskal*, Arizona Court of Appeals Case No. No. 1-CA-CV-26-0131.

Like in *Olson*, the product at issue in the Massachusetts litigation is very similar to the product at issue in this case.

To the best of counsel's knowledge, these are the only cases in the country that directly address the issue of whether a Home Equity Investment product that is nominally designated as an option contract can still be substantively characterized as a loan. As discussed below, the case cited by Defendants is not applicable to the Home Equity Investment product at issue here.

**3. *Foster v. EquityKey* involved a traditional option whereas Defendants' product behaves like a loan**

Point relies on a Northern District of California case, *Foster v. EquityKey Real Est. Invs., L.P.*, No. 17-cv0067-HRL, 2017 WL 1862527, (N.D. Cal. May 9, 2017), for the proposition that an option contract does not create a debt with a deferred expectation of repayment. This case discussed a different product than the contract at issue here. In *Foster,* the homeowner received a lump sum of money in exchange for 100% of the increase in value of the home above the fair market value of the home at the time of the contract. In other words, the homeowner received a lump sum of money in exchange for an option of the investor to purchase the home at a set price.

This is fundamentally different than Defendants' product. The agreement in this case includes multiple calculations about how much Plaintiff will need to repay and the requirement to repay Defendants in 30 years. *See* Ex. 1, p. 1. The agreement also contains certain restrictions on Plaintiff's ability to sell, ability to refinance, and take out loans against the property. There is an expectation of repayment and a deferral of money owed, which is not the same as a pure 100% option to purchase.

Defendants' product is designed to operate as a loan in multiple other ways. The definitions section of the agreement defines the "Point Proceeds" as "the amount calculated as

the monetary interest of Point under the Agreement and Option Documents, as further defined and calculated under Schedule 2." Ex. 1, p. 33. If this product was a pure option agreement as in *Foster*, this calculation is not necessary. Instead, Defendants include a calculation in their agreement of the amount owed under certain conditions, in other words an expectation of repayment for money borrowed.

Defendants' agreement includes a unique feature that distinguishes the product from a standard option to a loan. Defendants' initial investment is not based on the market value of the consumer's home, but rather on a discounted value. In Ms. Katzenberger's case, the "Original Agreed Value" was 17 percent lower than her home's appraised value. *See* Compl., ¶ 30; Ex. 1, p. 2. Defendants label this the "risk adjustment." This manipulation of the true value of the home acts as an interest rate, guaranteeing Defendants a high rate of return if the home value stays the same over time. If the home value increases over time, which is likely, Defendants stand to gain even more. The manipulation of the property value to include a hidden interest rate that produces not just a higher repayment amount, but one with a high level of interest, is exactly the type of predatory agreement that TILA disclosure requirements were intended to prevent.

Although it is likely that Defendants will receive a high rate of return on their investment, Plaintiff is not required to show that Defendants will realize any specific amount under the agreement, only a deferral of money owed. Even in the unlikely event that Defendants stood to lose money on their transaction with Plaintiff, they would still exercise their "option." This is because it is rational for Plaintiff to exercise the "option" if the marginal benefit from exercising it is greater than the marginal cost. It would only be rational for Defendants not to exercise the "option" if its share of the home's value (here, 69.4% multiplied the home's "Ending Agreed Value") is less than its "Exercise Payment" (here, $118,390.68). This would only occur if the

value of the home plummeted to $170,591.76.[3] This is approximately 51 percent of the home's appraised value at the time of the transaction. This would be an unprecedented decline in value. Because Defendants are virtually assured to exercise the "option," the "option" is illusory. It is merely a label Defendants use to disguise a complex, high-cost residential mortgage loan.

## CONCLUSION

Plaintiff should be permitted to litigate her claims in court and not be forced to arbitration. For the above reasons, she requests the Motion to Compel Arbitration be denied and to allow her to continue with this adversary proceeding, including discovery and further litigation as she is entitled to under the Truth in Lending Act.

DATED: August 28, 2026

Respectfully submitted,

*/s/ Alex Witteveld*
Alex Witteveld, (#41352)
Matt Forstie, (#56414)
Attorneys for Debtor/Plaintiff
Colorado Legal Services
215 W. Oak St., Suite 800
Fort Collins, CO 80521
(970) 493-2891, Ext. 106
awitteveld@colegalserv.org
mforstie@colegalserv.org

[3] $118,390.68 / 0.694 = $170,591.76.

## CERTIFICATE OF SERVICE

The undersigned certifies that on August 28, 2026, pursuant to L.B.R. 9013-1 and 9036-1, a copy of the foregoing **Response to Motion to Compel Arbitration** was electronically filed and served via e-mail to the following:

Jeffrey Paul Ehrlich
McGuire Woods LLP
jehrlich@mcguirewoods.com

Lacey Bryan
Markus Williams LLP
lbryan@markuswilliams.com

Standing Chapter 13 Trustee
Adam M. Goodman
P.O. Box 1169
Denver, CO 80201-1169

*/s/ Alex Witteveld*
Alex Witteveld